SCANNED
SEP 08 2023
U.S. DISTRICT COURT MPLS

23-cv-2782 (NEB/DTS)

# CHARGE OF DISCRIMINATION



Department of Human Rights
Freeman Building
625 Robert St N
St. Paul, MN  55155
651/539-1100
Toll-Free 1-800/657-3704
TTY  651/296-1283

**PREPARED BY LEGAL COUNSEL**

DEPARTMENT OF HUMAN RIGHTS USE ONLY

Case Number:

Any person claiming to have been discriminated against because of race, color, creed, religion, national origin, sex, sexual orientation, marital status, disability, age, public assistance status or familial status, as provided for in Chapter 363A of the Minnesota Statutes in the areas of employment, real property, public accommodations, public services, education, credit or business contracts may file a charge within one year after the alleged discriminatory act with the Minnesota Department of Human Rights at the above address.

Acknowledged by:

RECEIVED

Date Filed:                          Date Docketed:

SEP 08 2023

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| 1. CHARGING PARTY | 2. RESPONDENT |
|---|---|
| Leila Kasso<br>6066 Shingle Creek Parkway #1181<br>Brooklyn Center, MN 55430 | City of Minneapolis<br>Minneapolis Police Department<br>350 South 5th Street<br>Minneapolis, MN 55415 |

| 3. The discrimination was because of: | 4. The discrimination was in the area of: |
|---|---|
| Race, Color, Sex, Disability, Reprisal, Local Human Rights Commission Activity | Employment, Labor Organization |

5. Describe the discriminatory act, setting forth in statutory language the violation of Minnesota Statutes, Section §363A.

Charging Party is a black female who became an officer for Respondent in 2006.  Since in or around 2013, Charging Party has experienced significant and continued discrimination, harassment, and retaliation by Respondent.

Charging Party has repeatedly requested training and promotional opportunities, including but not limited to, bicycle training, taser training, and the opportunity to become a field training officer. Respondent refused to provide Charging Party the requested training and field training officer position, and instead provided these opportunities to white males Minnesota Human Rights Act ("MHRA").  Charging Party was also paid less than Respondent's white, male employees MHRA.

In or around December 2016, Charging Party underwent a surgery.  Following surgery, Charging Party was able to return to work with reasonable accommodation, but Charging Party's supervising sergeant opposed providing Charging Party a light duty assignment and Respondent refused Charging Party's request for reasonable accommodation.

Charging Party was subjected to additional discriminatory and retaliatory conduct after she filed a discrimination complaint against multiple supervisors and human resources employees of Respondent.

Charging Party learned that a sergeant was having sexual relations with subordinates. The sergeant treated Charging Party less favorably than he treated subordinates with whom he engaged in sexual relations.  Charging Party filed a complaint regarding the sergeant's conduct and was subjected to retaliation because of her complaint.

The discriminatory and retaliatory conduct to which Respondent subjected Charging Party includes, but is not limited to, being sent to priority one calls with no back-up, being denied overtime, being denied reasonable accommodation, being forced to stay later than common practice for other officers, being denied field training officer status, harassment, having false Office of Police Conduct Review complaints filed against her, malicious remarks about her in roll calls, treating her and her partner less favorably than other employees, and being ordered to take FMLA leave which she did not need.

In or around January 2018, Charging Party sought medical treatment due to the harassment and discrimination she experienced from Respondent and has been diagnosed with medical conditions.

In or around February 2018, Charging Party filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Charging Party's EEOC charge was also sent to the Minnesota Department of Civil Rights ("MDCR").

In May 2018, Charging Party was injured while on duty. While biking on patrol, Charging Party lost consciousness and struck a tree. Charging Party was treated at HCMC and then at Mercy Hospital. Following this injury, Charging Party took a medical leave.

While Charging Party was on a medical leave, Respondent engaged in discriminatory and retaliatory conduct against her, including but not limited to, sending emails with hostile and threatening language and demanding that she return forms that needed to be completed by her doctor within three days of receipt. In or around August 2018, Charging Party filed an additional charge of discrimination with the MDCR

In or around December 2018, Charging Party sent correspondence to a member of Respondent's Human Resources Department, requesting reasonable accommodation and information regarding the return-to-work process. Although Charging Party actively sought return-to-work information, Respondent failed to provide her with the requested information and continued to prevent her from returning to work.

In or around January 2019, Charging Party passed a promotional exam as part of a process to be promoted to the position of police sergeant.

In February 2019, Charging Party was ready to return to work and complied with all of Respondent's requests related to her return to work. As part of her return to work paperwork, Charging Party made a request for reasonable accommodation, including that she be scheduled to work day-shift hours and eight-hour shifts and that she be permitted to take reasonable breaks or perform desk work. Shortly after Charging Party submitted her return-to-work paperwork, Respondent denied her promotion.

Respondent did not allow Charging Party to return to work. Charging Party continued to request that Respondent provide her with reasonable accommodations and allow her to return to work. However, Respondent continued to fail to do so.

Charging Party requested that the president of her union file a grievance related to the denial of the promotion, but the union president failed to take any action.

The Assistant Chief of Police of Respondent sent Charging Party a certified letter requiring a fitness for duty exam as well as a Tennessen warning and medical records release authorization form. Charging Party completed the paperwork, but inadvertently overlooked a signature field on the back of one of the forms. A representative from Respondent's Human Resources Department notified Charging Party about the missing signature. The following day, Charging Party returned the signed form and was provided a personal copy. Charging Party also completed a return to work exam, but did not received any results.

Charging Party again sought a promotion to position of sergeant. Charging Party completed a physical examination with Occupational Medicine Consultants as part of the promotional process. During that examination, Charging Party was asked to authorize the release of medical records, despite the fact that Respondent already had access to the requested records. Nonetheless, Charging Party again authorized the release of necessary medical records.

Charging Party has complied with all return to work requirements and has repeatedly requested that Respondent allow her to return to work. Despite Charging Party's repeated requests, Respondent has inexplicably refused to allow her to resume work.

On or around July 15, 2019, Charging Party received a letter from Respondent's medical insurance provider stating that their records showed that Respondent had terminated Charging Party's employment. Respondent never notified Charging Party of her termination. Charging Party contacted the president of her union and requested that they verify whether her employment had been terminated as stated by the medical insurance provider. The president of the union responded "No." and failed to provide any other information or follow up with her regarding her employment status.

On September 6, 2019, Charging Party received a letter dated August 12, 2019 from a Human Resources Generalist of Respondent. The letter stated that the Human Resources Department was removing Charging Party's name from consideration and the eligible list for the position of police sergeant. The letter further stated that it is imperative for Respondent to ensure that all personnel are medically, psychologically, and emotionally fit for duty. However, Charging Party complied with the return to work requirements. Moreover, Charging Party completed a physical examination with Occupational Medicine Consultants as part of a promotional process to qualify for the sergeant position and again authorized the release of necessary medical records. Respondent's removal of Charging Party from consideration for the sergeant position evinces disability discrimination and retaliation as Charging Party complied with the return to work requirements, passed the promotional exam, completed a physical examination as part of the promotional process, and completed a medical authorization as part of the promotional process. Charging Party was able to perform the essential functions of the sergeant position with or without reasonable accommodation, but Respondent refused to consider her for the position because of her disability and requests for reasonable accommodation.

Respondent's refusal to consider Charging Party for the position of sergeant also evinces discrimination for her prior MHRA-protected conduct.

Respondent has treated Charging Party less favorably than it treats its white, male employees who have not engaged in conduct protected by the MHRA. Respondent does not similarly discriminate against, harass, or retaliate against white, male employees who have not engaged in MHRA-protected conduct. Respondent does not prevent white, male employees who have not engaged in MHRA-protected conduct from returning to work following a medical leave, refuse their requests for reasonable accommodation, terminate their employment, or refuse to consider them for promotions. Respondent does not retaliate against white, male employees who have not engaged in MHRA-protected conduct when they request reasonable accommodation.

Charging Party therefore alleges that Respondent has discriminated against her on the basis of her sex, race, and color in violation of Minn. Stat. § 363A.08, subd. 2. Charging Party further alleges that Respondent has discriminated against her on the basis of her actual disability, perceived disability, and record of disability, and has refused her requests for reasonable accommodation in violation of Minn. Stat. § 363A.08, subds. 2 and 6. Charging Party alleges that Respondent retaliated against her for requesting reasonable accommodation, for opposing a practice forbidden by the MHRA, and for filing a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing in violation of Minn. Stat. § 363A.15.

| | |
|---|---|
| Subscribed and sworn to before me this | I swear or affirm that I have read this charge and that it is true to the best of my knowledge, information, and belief. I understand that the data contained on this form may be made public. |
| _____ day of _____ 20____ | |
| _____<br>Notary Public | _____<br>(Signature of Charging Party) |

**THIS FORM WAS COMPLETED BY:**


Nicholas G. B. May
_____
NAME

#287106
_____
ATTORNEY REGISTRATION #

1625 Medical Arts Building, 825 Nicollet Mall
_____
ADDRESS

Minneapolis, MN 55402
_____
CITY, STATE, ZIP

612-353-3340          /          612-455-2217
_____
TELEPHONE NUMBER   /   FAX NUMBER

_____
ATTORNEY SIGNATURE

**Labor Organization Discrimination and Reprisal:**

Charging Party told Bob Kroll, the President of the Police Officers' Federation of Minneapolis, that she wished to file a grievance after she was passed over for a promotion in 2019. Kroll did not take any action. Similarly, when Charging Party asked Kroll for assistance regarding her return to work following a medical leave, he failed to help her. When Charging Party asked Kroll to verify whether her employment had been terminated as stated by Respondent's medical insurance provider, Kroll responded "No." and failed to provide any other information or follow up with her regarding her employment status. Charging Party believes that Kroll failed to assist her because she is a woman and because she opposed a practice forbidden by the Minnesota Human Rights Act, and filed a charge, testified, assisted, or participated in an investigation, proceeding, or hearing in violation of Minn. Stat. §§ 363A.08, subd. 1 and 363A.15.